**In re S & M CONSTRUCTORS, INC., Debtor.**

**The FOLEY COMPANY, Plaintiff,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Defendant.**

**Bankruptcy No. 92–11872 (N.D. Ohio).**

**Adv. No. 92–4196 (W.D.MO.).**

**No. 92–0327–CV–W–8 (W.D.MO.).**

United States Bankruptcy Court, W.D. Missouri.

Sept. 8, 1992.

---

Kevin E. Glynn (argued) William J. De-Bauche, Niewald, Waldeck & Brown, Kansas City, Mo., for plaintiff.

Edward Brown (argued), Arter & Hadden, Cleveland, Ohio, Mark Moedritzer, Shook, Hardy & Bacon, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The matters before the Court are a motion filed by The Foley Company ("Foley") seeking remand of this proceeding to the United States District Court for the Western District of Missouri, and a motion to have this proceeding transferred to the United States Bankruptcy Court for the Northern District of Ohio filed by Aetna Casualty and Surety Company ("Aetna"). For the reasons set forth below, Aetna's motion for transfer is DENIED, and Foley's motion for remand is SUSTAINED.

The following constitute this Court's findings of fact and conclusions of law under Fed.R.Civ.P. 52, which is made applicable to this adversary action pursuant to Fed.R.Bankr.P. 7052.

## FACTUAL BACKGROUND

On February 27, 1989, Foley, as general contractor, entered into a subcontract, with the debtor S & M as subcontractor, for a project for the United States Army Corps of Engineers known as the Power Reliability Enhancement Program, Fort Ritchie, Maryland. In accordance with the subcontract, S & M executed and delivered to Foley performance and payment bonds, with S & M as principal and Aetna as surety, for the benefit of Foley as obligee.

According to Foley, S & M failed to perform properly its obligations under the subcontract. Foley was forced to complete the work called for under the contract, including work allegedly performed improperly by S & M. Foley contends that, as a result of S & M's failure to perform its obligations under the subcontract, it has been damaged in the amount of $2,309,-336.37.

The subcontract between Foley and S & M provided that disputes arising thereunder were to be resolved by arbitration proceedings to be held in Kansas City, Missouri. (Exhibit B to Exhibit 1, Foley Motion for Remand filed July 10, 1992, paragraph 2). S & M filed a demand for arbitration with the American Arbitration Association on October 24, 1990. Counsel for S & M and Foley attended a preliminary hearing with the arbitrators on November 1, 1991, at which time the arbitration hearing was scheduled to begin on February 3, 1992 in Kansas City. On January 23, 1992, S & M filed a petition for temporary restraining order and preliminary injunction in the Circuit Court of Jackson County, Missouri, seeking a stay of the arbitration proceeding. On February 10, 1992, the Circuit Court of Jackson County, Missouri dissolved the temporary restraining order and denied S & M's request for a preliminary injunction. The arbitration was rescheduled for a temporary restraining order in the United States District Court for the Western District of Missouri (Sachs, J.),

again seeking a stay of the arbitration proceeding. S & M's request was denied on February 21, 1992.

On February 24, 1992, one day before the arbitration was to begin, S & M filed several pleadings in the United States Court of Appeals for the Eighth Circuit, including a notice of appeal, a motion for stay pending appeal, and a motion for temporary stay of the arbitration. On March 16, 1992, the Eighth Circuit denied S & M's requests. The arbitration was then rescheduled for March 23, 1992. On March 18, 1992, S & M filed a motion to stay enforcement of the Eighth Circuit's decision pending application to the United States Supreme Court for a Writ of Certiorari. On March 27, 1992, the Eighth Circuit issued its decision denying S & M's motion to stay pending application to the Supreme Court. The arbitration was again rescheduled, this time for March 31, 1992. On March 30, 1992, S & M filed for relief under Chapter 11 of the United States Bankruptcy Code in the Northern District of Ohio. According to counsel at oral argument, it is anticipated that any plan proposed by S & M will be a plan of liquidation, since S & M is not currently performing any other work.

On April 6, 1992, Foley filed a complaint against Aetna in the United States District Court for the Western District of Missouri. Foley alleges that it has made demand upon Aetna to complete the work that S & M failed to complete as required under its subcontract. Aetna has declined to pay Foley for any work it has subcontract. Aetna has declined to pay Foley for any work it has performed as a result of S &

M's improper performance, and refused to perform any of the work necessary to complete S & M's subcontract. Foley contends that Aetna has also failed to perform its obligations to Foley under the performance and payment bonds. Foley's complaint filed with the District Court against Aetna seeks to enforce Aetna's independent liability to Foley under the performance and payment bonds. Foley demanded a trial by jury in the complaint.

On May 8, 1992, Aetna filed, pursuant to 28 U.S.C. § 1452 and Fed.R.Bankr.P. 9027, a Notice of Removal of Foley's action from the District Court to this Court, and on May 15, 1992 filed its Answer to Foley's Complaint. As required by 28 U.S.C. § 1452, removal was made to this bankruptcy court, even though the bankruptcy proceeding which allegedly forms the basis for removal is pending in Ohio. On May 19, 1992, Aetna filed a motion to have this adversary action transferred to the United States Bankruptcy Court for the Northern District of Ohio. On July 10, 1992, Foley filed its motion to have this case remanded to the District Court, and its suggestions in opposition to Aetna's motion for transfer.[1]

## DISCUSSION

The issue that first must be addressed is whether this Court has jurisdiction over Foley's action against Aetna for recovery under the payment and performance bonds. Section 1334 of Title 28, United States Code, establishes four categories of bankruptcy cases and proceedings over which district courts may exercise jurisdiction.[2]

1. The removal, and the motion for remand, are based on 28 U.S.C. § 1452, which reads as follows:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under Section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding

a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title (28 USCS §§ 158(b), 1291 or 1292) or by the Supreme Court of the United States under section 1254 of this title.

2. Section 1334(a) and (b) provides as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the dis-

A district court may refer to the bankruptcy court any or all (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. 28 U.S.C. § 157(a). Such referral has been made in this district by order dated August 15, 1984. Section 157, however,

> does not give bankruptcy courts the full judicial power enjoyed by district courts under section 1334. Instead, with respect to proceedings other than the bankruptcy petition itself, section 157 divides all proceedings into two categories. Subsection 157(b)(1) confers upon bankruptcy judges the power to determine "all core proceedings arising under title 11, or arising in a case under title 11" and to enter appropriate orders and judgments. Subsection 157(c)(1), on the other hand, gives the bankruptcy judge only limited power to hear "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."

*In re Cassidy Land and Cattle Co., Inc.,* 836 F.2d 1130, 1132 (8th Cir.1988), *cert. denied, McCarty Ranch Trust v. Craig,* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988).

▪ Unless a case or proceeding falls within one of the four specified categories of cases and proceedings over which the district court is granted jurisdiction pursuant to section 1334(a) or (b), and which are listed in section 157(a), it cannot be heard by the bankruptcy court. The first such category of cases are those "cases under title 11," which are those "upon which all of the proceedings which follow the filing of the petition are predicated." 1 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 3.01[1][c][i], at 3–21 (15th ed. 1992). In other words, a "case under title 11" is the bankruptcy case itself commenced by the filing of the petition. *See In re Wood,* 825 F.2d 90, 92 (5th Cir.1987).

> trict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
>
> 28 U.S.C. § 1334(a) and (b).

▪ Likewise, the bankruptcy court may hear and determine "core proceedings arising under title 11, or arising in a case under title 11" that have been referred under section 157(a). 28 U.S.C. § 157(b)(1). "Core proceedings arising under title 11" include those causes of action which are expressly created by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers,[3] section 544 avoidance actions,[4] contested dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy. *See In re Peterson,* 104 B.R. 94, 96 (Bankr.E.D.Wis.1989). "Core proceedings arising in a case under title 11" usually involve claims that, although not expressly created under title 11, would have no existence absent the bankruptcy, such as administrative matters. *See* 1 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 3.01[1][c][v], at 3–33 (15th ed. 1992). A nonexhaustive list of "core proceedings" is found in 28 U.S.C. § 157(b)(2) .

▪ Finally, the bankruptcy court may hear non-core proceedings that are "related to" a case under title 11, but, unless the parties consent to entry of a final order by the bankruptcy court, may make only recommended findings of fact and conclusions of law to be submitted to the district court. 28 U.S.C. § 157(c)(1) and (2). According to *Collier,* the two categories of " 'related proceedings' are those which (1) involve causes of action owned by the debtor that became property of the estate under section 541, and (2) concern suits between third parties which in one way or another affect the administration of the title 11 case." 1 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 3.01[1][c][iv], at 3–29 (15th ed. 1992).

▪ Foley's action against Aetna for recovery under the payment and performance bonds certainly is not a "case under title 11." Nor is it a "core proceeding arising

3. *See, e.g., In re Boss–Linco Lines, Inc.,* 55 B.R. 299, 305 (Bankr.W.D.N.Y.1985).

4. *See, e.g., Carlton v. BAWW, Inc.,* 751 F.2d 781, 787 (5th Cir.1985).

under title 11," since it is not a claim or cause of action expressly created by title 11. Furthermore, it cannot be said that Foley's action would have no existence absent S & M's bankruptcy; and, therefore, the present action is not a "core proceeding arising in a case under title 11." In fact, the debtor S & M is not even a party to this action. The controversy as presently postured is between two non-debtor entities.

■ Thus, in order for this Court to entertain jurisdiction over this matter, it must be a "non-core proceeding related to a case under title 11." Since Foley's cause of action is not one that was owned by the debtor that became part of the estate under section 541, it may qualify as a "non-core related proceeding" only by virtue of its being a suit between third parties which affects the administration of the title 11 case, here S & M's bankruptcy case.

The authority upon which a majority of the courts rely in determining whether a non-core proceeding is sufficiently related to bankruptcy to confer jurisdiction on the bankruptcy court is *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). *See In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 n. 19 (11th Cir.1990). In *Pacor,* the plaintiff Higgins brought a product liability action in Pennsylvania state court against Pacor seeking damages allegedly caused by Higgins' exposure to asbestos that had been supplied by Pacor. Pacor then filed a third party complaint impleading Johns-Manville, which Pacor alleged to be the original manufacturer of the asbestos. The state court severed the Pacor-Manville third party action from the underlying Higgins-Pacor action. Pacor then sought to have the entire dispute removed to the United States Bankruptcy Court for the Eastern District of Pennsylvania, and then transferred to the Manville bankruptcy in the Southern District of New York. On appeal from the bankruptcy court's decision to remand the entire action to the state court, the District Court for the Eastern District of Pennsylvania ruled that the Higgins-Pacor direct action was not "related to" the Manville bankruptcy and should be remanded to the state court. *Pacor,* 743 F.2d at 986. The

district court did, however, find that the Pacor-Manville third party claim was a proceeding "related to" the Manville bankruptcy, and remanded that portion of the action to the bankruptcy court for consideration of Pacor's transfer motion. *Pacor,* 743 F.2d at 987.

In affirming the district court's determination that the Higgins-Pacor action was not a "related to" proceeding, the Third Circuit explained:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor,* 743 F.2d at 994 (citations omitted) (emphasis original). According to the Court of Appeals, the primary action between Higgins and Pacor "would have no effect on the Manville bankruptcy estate," and "[a]t best, [would be] a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Pacor,* 743 F.2d at 995.

The reasoning of the *Pacor* court was approved by the Eighth Circuit in *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986). *See also In re Dogpatch U.S.A., `Inc.,* 810 F.2d 782, 786 (8th Cir.1987).

In *Dogpatch,* the sole question addressed by the Court of Appeals was whether the bankruptcy court had jurisdiction over a cross-complaint brought against the debtor involving its liability on a debt to a group of secured lenders, along with the lenders' counterclaims against a nondebtor entity which had agreed to purchase the underlying collateral subject to the lenders' security interest, and a third party complaint against nondebtor guarantors. The bankruptcy court concluded that it had core

jurisdiction over the cross-complaint against the debtor, and that the counterclaims and third party complaint were non-core proceedings related to the chapter 11 bankruptcy case.

According to the Court of Appeals, to be a "related to" proceeding, it must "have some effect on the administration of the debtor's estate." *Dogpatch*, 810 F.2d at 786 (citations omitted). In agreeing that the bankruptcy court had "related to" jurisdiction, the court emphasized that the lenders sought and obtained joint and several judgments against the debtor and non-debtor parties, thereby placing the debtor's estate at risk of having to satisfy the judgments in the event the other defendants failed to do so. *Id.* This, the court believed, "certainly would have a real and tangible effect on the estate of the debtor." *Id. See also Rosen–Novak Auto Co. v. Honz,* 783 F.2d 739, 742 (8th Cir.1986) (debtors' adversary against insurer to prevent retroactive cancellation of insurance policy was non-core related proceeding).

The present action is distinguishable from *Dogpatch* and *Honz.* Here, the debtor is not a party to Foley's action, and a judgment in favor of Foley and against Aetna would not be joint and several against the debtor. Nor is this action one which has been brought by the debtor with the intent to increase the pool of assets in the estate, as was the case in *Honz.*

This action more closely resembles that in the case of *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986). In *Coopers & Lybrand,* a bank, which was the indenture trustee for various notes issued by one of the debtor entities, brought suit against Coopers & Lybrand under state law alleging negligence, fraud, and breach of contract. The bank sought to recover from Coopers & Lybrand the amount of the indenture noteholders' claims that were left unpaid under the terms of the debtor's reorganization plan. Coopers & Lybrand removed the action

from state court to federal court, alleging federal question jurisdiction based on 28 U.S.C. §§ 1331 and 1334(b). Thereafter, the bank filed a motion to remand the action to state court, and Coopers & Lybrand sought transfer of the action from the District Court for the District of Nebraska to the Bankruptcy Court for the Central District of California, which had retained jurisdiction over the bankruptcy proceedings. Upon concluding that the bank's action against Coopers & Lybrand was "at most a precursor to [Coopers & Lybrand's] potential indemnification action against" the debtor, the district court held, *inter alia,* that bankruptcy jurisdiction did not exist under 28 U.S.C. § 1334(b).[5] *Coopers & Lybrand,* 802 F.2d at 993 (citing the district court's slip opinion); *see also Pacor,* 743 F.2d at 995.

In reviewing the district court's holdings, the Court of Appeals agreed that the bank's action did not "arise under" title 11 "because none of [the bank's] claims is based on a provision of Title 11." *Coopers & Lybrand,* 802 F.2d at 994. Furthermore, the Eighth Circuit approved of the district court's reliance on the reasoning of *Pacor, Inc. v. Higgins, supra,* and agreed that the bank's action against Coopers & Lybrand did not constitute a "core proceeding arising in a case under title 11" or a "non-core proceeding related to a case under title 11." *Coopers & Lybrand,* 802 F.2d at 994.

Aetna attempts to distinguish *Pacor* on the basis that in *Pacor* there was no contractual indemnification between Pacor and Johns–Manville, whereas the debtor S & M and its four individual owners contractually agreed to indemnify Aetna for any liability incurred as a result of the performance and payment bonds. It is true that the Third Circuit did distinguish the Higgins–Pacor action from an action against a guarantor of the debtor's obligations. *Pacor,* 743 F.2d at 995. In *dictum,* the court explained that "[b]y virtue of the indemnifica-

---

**5.** According to the district court, bankruptcy jurisdiction did not exist because "(1) the actions did not 'arise under' or 'arise in' Title 11 because a bankruptcy debtor is not a party to the action and no relief under Title 11 is sought,

and (2) the action is not 'related to' a bankruptcy proceeding because the action cannot affect the bankruptcy estate." *Coopers & Lybrand,* 802 F.2d at 993 (citing the district court's slip opinion).

tion agreement between [the debtor] and [the guarantor], a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against [the debtor].... Moreover, even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that that [sic] creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation." *Pacor*, 743 F.2d at 995.

Like the bank's action against Coopers & Lybrand, and the Higgins–Pacor action in *Pacor*, Foley's action against Aetna is, at most, a precursor to Aetna's indemnification claim against S & M. The performance and payment bond obligations of Aetna, if any, are not an asset of S & M's bankruptcy estate. Pursuant to the terms of such bonds, S & M is not a necessary party to this action. A judgment against Aetna will not necessarily be dispositive of any defenses which S & M may have against Aetna's possible indemnification claims. Accordingly, as in *Coopers & Lybrand, supra*, Foley's action against Aetna is not a "non-core proceeding related to a case under title 11."

 In support of its motions, Aetna would have this Court believe that the debtor S & M could obtain in some other court an injunction of Foley's proceeding against Aetna. Such injunction might be sought based on the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362). Of course, the automatic stay does not by its terms stay actions against non-debtors such as Aetna here. Nevertheless, the Fourth Circuit has created an "unusual circumstances" exception to the general reach of 11 U.S.C. § 362. *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). In *Robins*, the Fourth Circuit was confronted with the issue of whether section 362 operated to stay suits in other courts against non-debtor co-defendants and other third parties, which had, along with the debtor Robins, been sued in connection with injuries

allegedly arising out of the use of the Dalkon Shield. After noting that section 362(a)(1) "is generally said to be available only to the debtor, not third party defendants or co-defendants," *Id.* at 999, the court explained the exception as follows:

> This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.

*Robins*, 788 F.2d at 999.

 However, the *Robins* analysis is not applicable here. In *Robins*, the court limited the "unusual circumstances" exception "by excluding from the coverage of the automatic stay those cases in which the third party is 'independently liable' to the creditor." *In re Lockard*, 884 F.2d 1171, 1179 (9th Cir.1989). Accordingly, a non-debtor surety, who is being sued on its surety contract and has obligations that are " 'independent' and primary, not derivative of those of the debtor", is not protected by the automatic stay. *Id.* (citing *In re McLean Trucking Co.*, 74 B.R. 820 (Bankr. W.D.N.C.1987)).

In fact, the Fourth Circuit itself has limited the "unusual circumstances" exception. *See Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir.1988). In *Williams*, a creditor obtained a default judgment against a non-debtor guarantor. The non-debtor guarantor sought to have the judgment declared void as a violation of the automatic stay in the debtor's bankruptcy case. In noting that nothing in section 362 "suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt," *Id.* at 121, the Court of Appeals agreed with the district court that section

362 afforded no automatic stay relief to the non-debtor guarantor. According to the court, since the very purpose of a guaranty is to assure performance in the event the debtor defaults, "the purpose of the guaranty would be frustrated by interpreting § 362 so as to stay [the creditor's] action against the non-bankruptcy guarantor when the defaulting debtor petitioned for bankruptcy." *Id.* at 122.[6] Thus, S & M should not be able to enjoin Foley's action against Aetna based upon the rationale of *A.H. Robins Co. v. Piccinin.*

I find, therefore, that this court does not have jurisdiction, pursuant to 28 U.S.C. § 1334, over the dispute between Foley and Aetna, neither of which is a debtor in any pending bankruptcy proceeding. Therefore, remand to the District Court is required. In addition, equitable grounds exist for such remand. 28 U.S.C. § 1452(b). Aetna might argue that transfer of these proceedings to the Bankruptcy Court in Ohio would allow all claims with any conceivable impact on the debtor to be resolved in the same proceeding. However, that would not be so here, because Foley has exercised its right to demand a jury trial as to its claims against Aetna. In Ohio, as in Missouri, Bankruptcy Judges are prohibited from conducting jury trials, so the result of a transfer to Ohio would simply be that the dispute between Foley and Aetna would be tried in the District Court in Ohio, rather than the District Court in Missouri. *See, In re Baker & Getty Financial Services, Inc.,* 954 F.2d 1169 (6th Cir.1992). Aetna also contends that the debtor might choose to bring litigation against Foley to recover amounts it claims are due it for retainage or other items. If such claim is brought by the debtor, Foley may well choose to exercise any right it may have to a jury trial in that

case as well, once again resulting in a district court, as opposed to a bankruptcy court action. If and when such case is filed, nothing in this Order precludes any party from asking that one action or the other be transferred and that all actions involving this dispute be consolidated.

In addition, it should be noted that trial of this case in District Court in Kansas City should in no way slow down or impede resolution of the S & M bankruptcy proceeding in Ohio. Depending on the outcome of this litigation, Aetna may have a claim against S & M to the extent Aetna makes payment on the bonds issued by it. Assuming that S & M is simply liquidated, that claim would share in the assets resulting from such liquidation pursuant to the priorities established by the Bankruptcy Code. In the meantime, if the amount of Aetna's claim against S & M is needed for purposes of voting on a plan, or for other reasons, the Bankruptcy Code provides that the bankruptcy court can estimate the amount of such claim. 11 U.S.C. § 502(c).

Ultimately, this lawsuit concerns Aetna's obligations, if any, to Foley, pursuant to a bond which was purchased and paid for by Foley. Foley purchased that bond so that it would be able to look to Aetna in the event that S & M defaulted on its obligations. S & M has allegedly defaulted, and Foley is simply attempting to hold Aetna to the obligations which Aetna allegedly undertook. Equitable grounds exist to remand this matter to the District Court.

### CONCLUSION

Based upon the foregoing, I conclude that this Court does not have jurisdiction over Foley's action against Aetna to recover on the performance and payment bonds, and that in any event equitable grounds

---

**6.** For cases concluding that section 362 does not stay an obligee's action to recover from a surety under a bond agreement, *see In re Lockard,* 884 F.2d 1171 (9th Cir.1989) (contractor's license bond executed by non-debtor third party and collateralized with property of debtor is not property of estate, and the obligee's state court action against surety is not subject to the automatic stay); *In re Mansfield Tire & Rubber Co.,* 660 F.2d 1108, 1115 (6th Cir.1981) (surety bond

posted to secure self-insured debtor's workers' compensation obligations); *In re McLean Trucking Co.,* 74 B.R. 820 (Bankr.W.D.N.C.1987) (same); *In re Apache Constr., Inc.,* 34 B.R. 415 (Bankr.D.Or.1983); *In re Jay Forni, Inc.,* 33 B.R. 538 (Bankr.N.D.Cal.1983); *In re M.J. Sales & Distrib. Co., Inc.,* 25 B.R. 608 (Bankr.S.D.N.Y. 1982); *In re Fintel,* 10 B.R. 50 (Bankr.D.Or. 1981).

**864**

exist to remand this matter to the United States District Court for the Western District of Missouri.

Having concluded that there is no bankruptcy jurisdiction over this matter, it is not necessary to address the parties' respective positions regarding the propriety of the transfer of this case to the United States Bankruptcy Court for the Northern District of Ohio.

An Order consistent with this Memorandum Opinion will be entered this date.