**In re VEECO INVESTMENT CO., L.P., Debtor.**

**VEECO INVESTMENT COMPANY, L.P., Plaintiff,**

**v.**

**MERCANTILE NATIONAL BANK OF ST. LOUIS, N.A., Defendant.**

**Bankruptcy No. 92–43068–399.
Adv. No. 93–4347–399.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

July 29, 1993.

Peter D. Kerth, Clayton, MO, for debtor/plaintiff.

David L. Going, St. Louis, MO, for defendant.

Steven Goldstein, St. Louis, MO, for Mr. & Mr. Cohen.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This matter comes before the Court on the Complaint of Veeco Investment Company, L.P., the Debtor in this Chapter 11 proceeding, for a temporary injunction against Mercantile National Bank of St. Louis, N.A. The Debtor seeks to enjoin Mercantile from executing on a judgment it obtained against two individuals who personally guaranteed the Debtor's obligation to Mercantile because Debtor's reorganization plan is dependant upon financial contributions from these guarantors.

### JURISDICTION

This Court has jurisdiction to determine the issues herein pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A).

### FACTS

The facts in this proceeding are undisputed. Veeco Investment Company, L.P. ("Veeco" or the "Debtor") is a Missouri limited partnership engaged in the development and operation of real estate, principally commercial shopping centers. At the commencement of this voluntary Chapter 11 proceeding, Debtor was the owner of two shopping centers in St. Louis County known as Lamp & Lantern Shopping Center and Apple Tree Square. Debtor filed its petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) on April 28, 1992 to prevent foreclosure of a note held by Mercantile National Bank of St. Louis, N.A. ("Mercantile") and secured by the Apple Tree Square Shopping Center. Since filing its petition for relief, and pursuant to authorization from this Court, the Apple Tree Square property was sold and the net proceeds were paid to Mercantile.

On July 9, 1993, Mercantile obtained a deficiency judgment with respect to the Apple Tree Square loan. Judgment in the amount of $521,155.60 issued against J. Frederic Cohen, Trustee of the J. Frederic Cohen Living Trust, Vera Cohen, Trustee of the Vera Cohen Living Trust, and Donald J. Cohen, jointly and severally under two counts and against J. Frederic Cohen and Vera Cohen, individually as guarantors of the obligation.

The J. Frederic Cohen Revocable Trust, the Vera Cohen Revocable Trust and Scott M. Cohen are the general partners of Veeco; Norman S. Cohen is a limited partner.[1] J. Frederic and Vera Cohen, husband and wife (the "Cohens") are trustees of their respective revocable trusts. (the "Trusts"). Each Trust owns a 0.5% Class A Capital Percentage Interest and a 16.5%

---

1. The trusts of Frederic and Vera Cohen are known interchangeably as the J. Frederic and Vera Cohen Revocable or Living Trusts.

454

Class B Capital Percentage Interest in Vee-co.[2]

At the time it filed its petition for relief, Veeco was also in default under a note from Phoenix Home Life Mutual Insurance Company ("Phoenix"). This note is secured in part by the Lamp & Lantern Shopping Center. As part of its plan of reorganization, Debtor's plan proposes to cure its default under the Phoenix loan with cash received from a loan from the Debtor's general and limited partners. [See, Debtor's Plan dated January 14, 1993, para. 4.2]. In reality, and more accurately, the Cohens are the source of funds which will be used to cure the Phoenix note and fund the plan. Consequently, when Mercantile threatened to enforce its deficiency judgment against the Cohens, Debtor filed the instant complaint seeking to enjoin Mercantile from pursuing these guarantors. Debtor contends that if Mercantile is allowed to collect its judgment from the Cohen's, the Cohens will not have the ability to fund the Debtor's plan and the bankruptcy estate will be irreparably harmed.

In support of its complaint, Debtor asserts that case law holding that bankruptcy courts may enjoin creditors from pursuing the individual partners of a debtor partnership should be extended to the instant situation because of the vital role the Cohens' financial contribution plays in this reorganization. Conversely, Mercantile asserts that partnership case law should not be extended to the instant situation because the Cohens are not partners of the Debtor but are, instead, independent guarantors who have voluntarily agreed to fund the Debtor's reorganization plan, and as such, their property is not entitled to the protections of the automatic stay afforded property of the Debtor's estate. In addition, Mercantile contends that to deny it the right to proceed against the Cohens deprives Mercantile of a right it bargained for when it obtained personal guarantees.

### DISCUSSION

The plain language of 11 U.S.C. § 362 provides only for the automatic stay of judicial proceedings and enforcement of judgments against the debtor or property of the estate. *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir.1988). By its terms the automatic stay does not stay actions against non-debtors. Nonetheless, courts have created an "unusual circumstances" exception to this general rule. *See, A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986) *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Dalkon Shield Claimants Trust v. Reiser, (In re A.H. Robins Co. Inc.)*, 972 F.2d 77, 82 (4th Cir.1992). In *Robins*, the Fourth Circuit explained the exception stating:

This "unusual situation" it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgement or a finding against the debtor.

*Robins*, 788 F.2d at 999.

Such an exception, does not, however apply to a non-debtor surety, who is being sued on its surety contract and has obligations that are "independent and primary, not derivative of those of the debtor ..." *In re S & M Constr., Inc.*, 144 B.R. 855, 862 (Bankr.W.D.Mo.1992), *quoting In re Lockard*, 884 F.2d 1171, 1179 (9th Cir.1989).

This exception recognizes a clear and extremely relevant distinction between collection from a guarantor or surety and collection from the partners of a debtor partnership. In the later situation, the partners individual assets are part of the general fund to which partnership creditors look to satisfy partnership debts. *In re Old Orchard Inv. Co.*, 31 B.R. 599, 601 (D.C.Mich.1983). Collecting partnership debts from a partner, individually, has repercussions on the debtor-partnership *Id.* and the automatic stay, therefore, operates to preserve these assets for the benefit of all creditors. When a guarantor or surety, however, is sued for the debts of its principal, payment is made from the assets of

**2.** The Trusts also retain a 45.153% Distribution Percentage Interest in Veeco.

the guarantor and not from the debtor's assets. Thus, the net pool available to creditors is not depleted. *Id.* Accordingly, a non-debtor surety, who is being sued on its surety contract is not protected by the automatic stay. *S & M Constr.* 144 B.R. at 862.

Moreover, as the Fourth Circuit explained in *Credit Alliance Corp. v. Williams:*

> [n]othing in section 362 suggests that Congress intended [this] provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts. *See,* 11 U.S.C. 1301(a). No such protection is provided to the guarantors of Chapter 11 bankrupts by § 362(a).

*Id.* 851 F.2d at 121.

■ In the instant case, the Cohens are independent guarantors of the Debtor's obligation to Mercantile. As guarantors they are not protected by the automatic stay, and for the reasons set forth above, the automatic stay provides no authority for the Court to enjoin Mercantile's collection efforts against the Cohens on their guarantees.

■ Alternatively, the Debtor suggests the Court employ its equitable powers under § 105 to enjoin Mercantile's collection actions. As support for its position the Debtor cites *In re Myerson & Kuhn,* for the proposition that:

> Section 105 grants bankruptcy courts ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process ... [or] which will have an adverse impact on the debtor's ability to formulate a Chapter 11 plan.

*Id.* 121 B.R. 145 (Bankr.S.D.N.Y.1990) (citations omitted). *See also, In re Heron, Burchette, Ruckert & Rothwell,* 148 B.R.

660 (Bankr.D.Col.1992); *In re F.T.L., Inc.,* 152 B.R. 61 (Bankr.E.D.Va.1993). In each of these cases, the courts enjoined collection from partners or principles of the debtor because reorganization was dependent on financial contributions from these individuals. However, in these cases, unlike the situation before this Court, the identity of the parties from whom collection was enjoined was so "inexorably interwoven" with the debtor that it may be said the debtor was in fact, the real party against whom the creditor was proceeding. *Id.* at 63, *citing, A.H. Robins Co.,* 788 F.2d at 1004. In the instant case, we are not faced with actions directed against a partner or principal of the debtor. Indeed, the Cohens only interest in Veeco is through their respective Trusts, and even then, the Trusts hold only a 17% capital interest in the Debtor.

"There are two rationales underpinning a rule protecting a partner from actions to collect the debts of a bankrupt partnership. One is to protect the integrity of the automatic stay. The other is to protect the integrity of the Bankruptcy Code policy of preventing a destructive race-for-assets among creditors." *In re Old Orchard Inv.,* 31 B.R. at 602. When a creditor proceeds against a guarantor, as in the instant case, neither of these rationales is implicated. The automatic stay does not apply to the guarantor nor is there a "destructive race-for-assets" because the assets pursued under the guarantee are not property of the estate. *See* 11 U.S.C. § 541.

■ None-the-less, Debtor asserts that the Court should use its equitable power to enjoin Mercantile from proceeding against the Cohen's because their financial contribution is essential to the Debtor's reorganization effort. The Court may only issue an injunction after consideration of:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties;

(3) the probability that the movant will succeed on the merits; and

(4) public interest.

*Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981). After considering these factors, the Court concludes that it may only grant the injunction requested if it extends the existing doctrines under either § 362(a)(3) or § 105 beyond their present application to partnership and corporate principal cases. There is a valid distinction in bankruptcy between the existence of a partnership, its partners and independent guarantors of the partnership's obligations. The Court declines Debtor's invitation to distort this distinction by treating the guarantors in this case as partners merely by virtue of (1) the necessity of their financial contribution, and (2) their indirect connection to the Debtor through the Trusts. Accordingly,

IT IS ORDERED that judgment is entered in favor of Defendant, Mercantile National Bank of St. Louis, N.A. and against Plaintiff, Veeco Investment Company, L.P. in that Plaintiff's request for injunctive relief is denied.