In re MURRAY INDUSTRIES, INC., et al., Debtor.

OMC RECREATIONAL BOAT GROUP, INC., Plaintiff,

v.

Kenneth J. LAINO, Administrator of the Estate of Marla C. Hoffman, Deceased, and as Personal Representative for the Beneficiaries of Marla C. Hoffman, Morrison & Laino, Co., L.P.A., Defendant.

Bankruptcy Nos. 88–7473–8P1 to 88–7844–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 9, 1995.

Jeffrey W. Warren, Tampa, for Plaintiff.

Harley Riedel, Tampa, for Defendant.

Kent B. Schneider of Hermann, Cahn, Cleveland, OH, U.S. Trustee.

## ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS is a confirmed Chapter 11 case and the matter under consideration is a Complaint filed by OMC Recreational Boat

Group, Inc. (OMC), a non-debtor, seeking injunctive relief against Kenneth J. Laino, also a non-debtor, as both administrator of the estate of Marla C. Hoffman, deceased, and as personal representative for the beneficiaries of Marla C. Hoffman (Defendant). In its Complaint, OMC seeks an order enjoining a products liability action filed by the Plaintiff in the Court of Common Pleas, Cuyahoga County, Ohio. The issue presently before this Court is a Motion to Dismiss filed by the Defendant contending that this Court does not have subject matter jurisdiction to entertain this adversary proceeding. OMC and the Defendant have both filed Motions for Summary Judgment contending that there are no genuine issues of material fact and each is entitled to a judgment in its favor as a matter of law. The facts relevant to resolution of this controversy are without dispute and are as follows:

Prior to the commencement of this case, on July 12, 1984, Murray Chris–Craft Cruisers, Inc. produced a 33–foot Commander Sports Yacht. Sometime thereafter, George Hoffman purchased this boat and named it "The Plane Crazy IV."

On December 9, 1988, Murray Industries, Inc. and its 15 related subsidiaries (Debtors) filed Petitions for Relief under Chapter 11 of the Bankruptcy Code. On January 13, 1989, this Court entered an order authorizing and directing the Debtors to sell certain assets of the estate to an entity known as Outboard Marine Corporation, the predecessor in interest of OMC. The Order approved the sale of the assets free and clear of certain lien interests. However, the Order made no mention of whether the sale was subject to free and clear of successor liability interests although the Order did provide that "OMC shall not assume or succeed to any of Debtors' liabilities."

On October 25, 1990, the Debtors filed their Second Amended Plan of Reorganization. The Plan itself provided for the establishment of separate reorganization trusts for various sets of claimants. On March 6, 1991, an Order of Confirmation was entered by this Court, confirming the Debtors' Amended and Consolidated Plan of Reorganization. Shortly thereafter, the Murray Industries Plan of Reorganization was substantially consummated.

On May 9, 1993, an explosion and fire aboard The Plane Crazy IV killed Marla C. Hoffman (Ms. Hoffman). Ms. Hoffman had had no privity with the Debtor and no one was aware of any possible products liability claim by Ms. Hoffman against Murray Industries or any of its related entities. It is without dispute that Ms. Hoffman was not personally served with notice of the sale of the Debtor's assets to OMC or of the bar date to file claims or objections to confirmation of the Debtor's Plan. However, it is equally without dispute that her husband did in fact receive notice of the bar date as a warranty claim holder.

On January 14, 1994, the Defendant, as administrator of the estate of Marla Hoffman, brought suit in the Court of Common Pleas, Cuyahoga County, Ohio and sought damages from OMC based upon successor liability based on the alleged negligent manufacture and/or design of the boat. The suit was removed to the federal district court in Ohio on the basis of admiralty jurisdiction. A Motion to Remand filed by the Defendant is pending. On May 21, 1994, OMC filed the above captioned adversary proceeding seeking to enjoin the Ohio litigation.

These are the facts relevant to the matter under consideration in the Motion to Dismiss filed by the Defendant. In its Motion the Debtor contends that OMC in its adversary proceeding seeks a determination of rights between two non-debtor parties, and therefore, this Court does not have subject matter jurisdiction to adjudicate this controversy.

In opposition, OMC contends that it is seeking an interpretation of the rights and liabilities under the Order of Confirmation with regard to the issue of successor liability. Obviously the Motion to Dismiss is a threshold issue because it is based on alleged lack of jurisdiction of this Court and therefore should be resolved first.

 Bankruptcy jurisdiction is limited to the specific grant found in 28 U.S.C. § 1334. *FDIC v. Majestic Energy Corp.,* 835 F.2d 87 (5th Cir.1988). Section 1334(b) provides in pertinent part:

the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.

Unless a proceeding falls within one of these three specified categories of proceedings over which the district courts are granted jurisdiction pursuant to § 1334, it cannot be heard by the bankruptcy courts. *See In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir.1991). Proceedings arising under Title 11 are defined as causes of action expressly created by the Bankruptcy Code. *See In re S & M Constructors, Inc.*, 144 B.R. 855 (Bankr.W.D.Mo.1992). Proceedings arising in a case under Title 11 contemplate matters that would have no existence absent the filing of the petition for relief in bankruptcy. "Related to" jurisdiction describes causes of action owned by the Debtor that became property of the estate under § 541 and suits between third parties which in one way or another affect the administration of the Title 11 case.

It needs no elaborate discussion to establish that this Court does not have jurisdiction over this controversy under the "arising in" or "arising under" provisions of § 1334. It is obvious from the outset that the controversy before the Court does not involve the Debtor as a party in any context. In addition, it is clear that the issues presented for resolution under OMC's complaint seek a determination of OMC's liability pursuant to the language contained in the Order Approving Sale of Assets and the Order of Confirmation, as well as under theories of successor liability. The controversy does not involve administration of the Debtor's estate, nor does it involve any properties of the Debtor's estate. Accordingly, this Court is satisfied that this Court does not have subject matter jurisdiction over this controversy under the "arising under" and "arising in" provisions of § 1334.

This leaves for consideration subject matter jurisdiction pursuant to the "related to" provision. The Third Circuit Court of Appeals has enunciated factors to be considered in determining whether a controversy is sufficiently related to a bankruptcy case to establish subject matter jurisdiction.

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the Debtor or against the Debtor's property. An action is related to the bankruptcy if the outcome could alter the Debtor's rights, liabilities, options or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984). In applying the *Pacor* factors it must be determined whether at the time the civil action was filed, the result of the action could conceivably have affected the administration of the bankruptcy estate. *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir.1990).

In the instant case, the administration of the Debtors' estate is complete. The Plan of Reorganization was primarily a total liquidation plan. Substantially all the assets of the Debtors were sold to OMC with the proceeds of this sale, $53 million, placed in a variety of reserve funds for the payment to different categories of creditors. However, the resolution of the controversy presented by OMC cannot affect the reserves created by the Plan of Reorganization. The resolution of the controversy may affect the obligations of OMC, however it will not change the amount in the reserves nor the amount to be paid to creditors holding allowed claims. These matters are fixed by the Order of Confirmation and therefore, it is clear that this controversy cannot be considered to affect the administration of the Debtors' estate.

OMC contends that this controversy requires the interpretation of Orders entered by this Court, and as such, the controversy affects the administration of this estate. However, this is not entirely true. If the controversy surrounded the Debtors' obligation to perform under the Orders, then clearly the matter would affect the administration of this estate. The issues are too remote from the bankruptcy case for this Court to exercise jurisdiction over the matter. Based upon the foregoing, this Court is

satisfied that the Motion to Dismiss is well taken and should be granted. Inasmuch as this Court has determined it does not have jurisdiction to consider this matter, it is not appropriate for this Court to consider the Motions for Summary Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss is hereby granted and this adversary proceeding is hereby dismissed.

ORDERED, ADJUDGED AND DE-CREED that the Motions for Summary Judgment are hereby denied as moot.