**In re FARMLAND INDUSTRIES, INC., et al., Debtors.**

**Safeco Insurance Company of America, Plaintiff,**

**v.**

**Farmland Industries, Inc. and ADM/Farmland, Inc., Defendants.**

**Bankruptcy No. 02–50557–JWV.**
**Adversary No. 02–4151–JWV.**

United States Bankruptcy Court, W.D. Missouri.

Feb. 28, 2003.

Cassandra L. Writz, Cynthia Dillard Parres, Laurence M. Frazen, Mark G. Stingley, Robert M. Thompson, Tammee E. McVey, Lloyd A. Palans, Michelle M. Masoner, Bryan Cave LLP, Gene A. De-Leve, Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, Michael D. Hockley, Spencer, Fane, Britt & Browne, Kansas City, MO, Frank W. Lipsman, Morton, Hubbard, Ruzicka & Kreamer, Olathe, KS, for debtor/defendant.

Bruce E. Strauss, Thomas N. Lane, Merrick, Baker, Strauss, Kansas City, MO, for plaintiff.

## MEMORANDUM ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The matter before the Court is the motion filed by ADM/Farmland, Inc. ("ADM") pursuant to Fed. R. Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(1)[1] requesting that the Court dismiss the Amended Complaint for Declaratory Judgment, Injunctive Relief Under Section 105 of the United States Bankruptcy Code, Adequate Assurance and Adequate Protection, and for Exoneration, or, in the Alternative, Quia Timet ("Amended Complaint") filed by Safeco Insurance Company of America ("Safeco"). Based on the following discussion, the Court determines that it lacks subject matter jurisdiction over Safeco's cause of action against ADM, and will dismiss that part of the Amended Complaint. However, the Court will hold in abeyance Safeco's causes of action against Farmland Industries, Inc. ("Farmland") pending a determination in an appropriate forum whether Safeco is liable to ADM under the surety bond. If an appropriate forum determines that Safeco is liable to ADM, it may continue with the prosecution of the causes of action pending against Farmland. If an appropriate forum determines that Safeco is not liable to ADM, Safeco promptly will dismiss the Amended Complaint. The Court will schedule a status conference every six months in this adversary proceeding in order to track the progress of Safeco's action in another forum against ADM.

### Discussion

 Federal Rule of Civil Procedure 12(b)(1), which is applicable to adversary

---

**1.** In the caption of its motion to dismiss ADM purports to seek dismissal under Fed.R.Civ.P. 12(b)(6) in addition to Fed.R.Civ.P. 12(b)(1). However, in its Memorandum of Law in Support of Defendant's Motion to Dismiss Amended Complaint, ADM clarifies that it is only seeking dismissal under Fed.R.Civ.P. 12(b)(1). Accordingly, the Court will not address whether dismissal is appropriate under Fed.R.Civ.P. 12(b)(6), and summarily denies any request for relief under same.

proceedings by virtue of Federal Rule of Bankruptcy Procedure 7012(b), provides the means by which a party may seek dismissal of an adversary proceeding on grounds that the bankruptcy court lacks subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1). The plaintiff has the burden to show that the Court has subject matter jurisdiction over the proceeding. *See Osborn v. United States,* 918 F.2d 724, 730 (8th Cir.1990); *Bayview Plaza Assocs. Ltd. P'ship v. Town of North East, Maryland (In re Bayview Plaza Assocs. Ltd. P'ship),* 209 B.R. 840, 841–42 (Bankr. D.Del.1997). In the recitation of the factual background of this proceeding, the Court is guided by the well established principle that when considering a motion to dismiss for lack of subject matter jurisdiction, the bankruptcy court must accept as true the adversary complaint's well-pleaded factual allegations and must draw reasonable inferences in the plaintiff's favor. *See Blackmon Auctions, Inc. v. Van Buren Truck Center, Inc.,* 901 F.Supp. 287, 288–89 (W.D.Ark.1995); *Schroeder v. United States (In re Van Dyke),* 275 B.R. 854, 857 (Bankr.C.D.Ill.2002); *Bayview Plaza Assocs. Ltd. P'ship,* 209 B.R. at 841.

In its Amended Complaint Safeco states that Farmland as principal and Safeco as surety executed and delivered bond number 6101710 in favor of ADM as obligee in the penal sum of $5 million. In connection with bond number 6101710 and other bonds issued or to be issued by Safeco on behalf of Farmland and/or its affiliates, Farmland made, executed and delivered to Safeco certain General Agreements of Indemnity dated November 15, 1988, and October 6, 1993.

Pursuant to the terms of bond number 6101710, ADM could make a claim thereunder if Farmland failed to perform its duties in connection with a purchase agreement:

WHEREAS, the above bounded Principal [Farmland] has entered into a PURCHASE AGREEMENT with the above named Obligee [ADM], dated the *4th* day of *May* A.D. *2001* pertaining to: Certain grain handling facilities as listed in the PURCHASE AGREEMENT. . . .

WHEREAS, the Obligee requires, and the Principal and Surety agree to issue this bond in support of the above mentioned Agreement.

NOW THEREFORE, the condition of the bond is such, that, if the above bounded Principal shall well and truly keep, do, and perform the duties required of the Principal as set forth in the said Agreement and in the manner specified therein, then this obligation shall be void; otherwise to remain in full force and effect unless cancelled or terminated as set forth below.

The terms of bond number 6101710 also provided that it could be cancelled unilaterally by Safeco:

AND FURTHER PROVIDED, this bond shall become effective *May 4, 2001* and shall remain in full force and effect thereafter for a period of one year and will automatically extend for additional one year periods from the expiry date hereof, or any future expiration date not to exceed five (5) years, unless the Surety provides to the Obligee not less than ninety (90) days advance written notice of its Intent not to renew this Bond or unless this Bond is earlier canceled pursuant to the following. This bond may be canceled at any time upon ninety (90) days advance written notice from Surety to Obligee.

The terms of bond number 6101710 further provide for the forfeiture of the penal sum if the bond is canceled or not renewed by the surety and the obligee does not receive replacement security within 20 days of the effective date of cancellation:

It is understood and agreed that the Obligee may recover the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) if the Surety cancels or nonrenews the Bond and, within twenty (20) days prior to the effective date of cancellation or nonrenewal, the Obligee has not received security acceptable to it to replace the Bond.

Prior to Farmland's bankruptcy filing on May 31, 2002, Safeco issued a notice of cancellation of bond number 6101710, to be effective post-petition on July 26, 2002. Thereafter, Safeco received correspondence dated July 11, 2002, from Archer Daniels Midland Company ("Archer Daniels"), which appeared to be acting on behalf of ADM, requesting that Safeco provide $5 million. On July 24, 2002, Archer Daniels again corresponded with Safeco, stating "we want to have Five Million Dollars wire transferred to ADM on July 26, 2002."

On July 25, 2002, Farmland and Safeco agreed to a Term Sheet (subject to the Court's approval), which when fully implemented would result in the complete reinstatement of bond number 6101710, subject to the terms, limitations and conditions thereof.

Also on July 25, 2002, Ann T. Hester, who is a Senior Claims Representative of Safeco, contacted by telephone Michael Lusk, who is Vice President Insurance and Risk Management of Archer Daniels. Ms. Hester requested the consent of Mr. Lusk to an extension of bond number 6101710 to September 25, 2002, in order to provide sufficient time to obtain this Court's approval and closing of the transactions contemplated by the Term Sheet, including reinstatement in full of bond number 6101710 for the original term thereof, subject to the terms, limitations and conditions thereof. According to Ms.

Hester, Mr. Lusk agreed to an extension of bond number 6101710 to September 25, 2002. By letter dated July 25, 2002, Safeco confirmed with Mr. Lusk the agreement reached on that same date with respect to the extension of the effective date of termination of bond number 6101710 to September 25, 2002. However, by correspondence dated July 26, 2002, Mr. Lusk advised Safeco that "ADM would prefer that the cash be transferred rather than the Bond extended to September."

By correspondence dated August 1, 2002, to Mr. Lusk, Safeco expressed concern "about the abrupt reversal of ADM's position after it accepted an extension of the referenced Farmland Bond evidenced by my letter to you of July 25, 2002." On August 2, 2002, Archer Daniels responded, denying that anyone had agreed to extend bond number 6101710 to September 25, 2002, expressly stating that "at no time did Michael Lusk or anyone else on behalf of ADM accept, orally or in writing, an extension of the bond."

Safeco asserts that on July 25, 2002, ADM agreed to a new effective cancellation date of bond number 6101710. Alternatively, Safeco contends that by communication and written confirmation dated July 25, 2002, it revised its prior notice of cancellation to provide for a new effective cancellation of bond number 6101710. Safeco asserts that there are no claims pending against Safeco by reason of bond number 6101710; that Farmland is not in default under the terms of this bond; that this bond remains in full force and effect until September 25, 2002, in accordance with the terms, limitations and conditions thereof; and that ADM has received a replacement or renewal bond from Safeco within 20 days prior to the previous effective date of cancellation in accordance with the terms of bond number 6101710, and the 20-day period prior to the new effec-

tive date of cancellation has not yet begun to run.

Safeco also alleges that subsequent to the filing of the original complaint in this action, it decided to extend the term of bond number 6101710 until the earlier of either May 3, 2003, or the expiration of the bond by its terms. Safeco notified ADM of this extension of the effective date of termination of the bond term by letter dated August 30, 2002. Safeco asserts that because it has extended the date of effective cancellation of bond number 6101710, there has never been an effective cancellation or non-renewal of the bond and, accordingly, ADM is not entitled to $5 million. Safeco further contends that because all of the events giving rise to ADM's assertion of a claim against bond number 6101710 occurred post-petition, and Farmland's alleged failure to provide a substitute bond likewise occurred post-petition, Safeco anticipates that if it is required to make payment under bond number 6101710, it will file an administrative expense claim against Farmland pursuant to the terms of the General Agreements of Indemnity and Safeco's common law rights under the bond. Safeco asserts that the bankruptcy estate and Farmland's ability to reorganize will be immediately and irreparably harmed if it files a liquidated $5 million claim, whether as a general unsecured creditor or as an administrative claimant.

In Count I of its Amended Complaint, Safeco alleges that pursuant to the terms of bond number 6101710, as surety it had a unilateral right to cancel the bond and that said cancellation is effective only upon a date established by delivery of 90 days written notice to ADM. Further, the delivery of such notice establishes a date upon which the bond ceases to be effective. Safeco decided to extend the cancellation date of the bond and determined that it intends to allow the term of the bond to continue until the earlier of either Safeco's effective cancellation of the bond on May 3, 2003, or the expiration of the bond by its terms. Safeco has issued the necessary notice to give effect to such an extension. Accordingly, the bond continues to remain in effect until May 3, 2003, because there was never an effective cancellation. Because bond number 6101710 remains in full force and effect, at least one condition precedent has not been satisfied under the forfeiture provision of the bond, and, therefore, Safeco is not bound to forfeit the $5 million penal sum of the bond to ADM. However, in spite of Safeco's extension of the cancellation of bond number 6101710, and in spite of the absence of any intervening cancellation or non-renewal of the bond, ADM continues to make demand upon Safeco for the $5 million penal sum of the bond. Safeco requests a determination by this Court that under the circumstances, ADM is not entitled to a forfeiture of the $5 million penal sum of the bond.

In Count II of its Amended Complaint, Safeco alleges that as surety under bond number 6101710, it is entitled to the equitable remedies of exoneration or, in the alternative, *quia timet*, against Farmland as the principal under the bond, if the Court determines that the conditions precedent have been satisfied under the forfeiture provision of the bond, and that ADM is indeed presently entitled to an immediate forfeiture of the $5 million penal sum of the bond by Safeco. If the Court declares that all of the conditions precedent to forfeiture of the bond penal sum have been met and that $5 million, or security acceptable to ADM in the amount of the penal sum of the bond, is presently owing or is imminently due to ADM, then Farmland, as principal, is under a duty to exonerate or *quia timet* Safeco for the penal sum owed by Safeco to ADM. To date, Farmland has refused or otherwise

failed to tender to ADM replacement security acceptable to it, and has further refused or otherwise failed to tender an amount equal to the penal sum of the bond to ADM, or otherwise place Safeco in funds or property in sufficient amount to satisfy any immediate or imminent debt that this Court may declare due against Farmland and Safeco pursuant to the terms of the bond. This refusal or failure constitutes a breach of Farmland's duties under bond number 6101710 and prejudices Safeco to the extent that it could be subjected, pursuant to its duties under the bond, to advancing funds to ADM. Safeco requests that the Court enter judgment for *quia timet* in its favor and against Farmland, and require Farmland to immediately place Safeco in funds or property sufficient to satisfy any debt that may imminently become owing by Safeco to ADM pursuant to the terms of the bond. Alternatively, Safeco requests that the Court enter judgment for exoneration in its favor against Farmland, and require Farmland to exonerate Safeco for its obligations under the bond by conveying funds or property to Safeco in an amount sufficient to satisfy any debt that the Court deems is presently owing by Safeco to ADM pursuant to the terms of the bond.

In Count III of its Amended Complaint, Safeco alleges that bond number 6101710 constitutes an executory contract between Farmland and Safeco, as well as a financial accommodation from Safeco to Farmland, as contemplated by the Bankruptcy Code. By Farmland's refusal or otherwise failure to tender to ADM replacement security acceptable to it, or to tender an amount equal to the penal sum of the bond to ADM, or otherwise place Safeco in funds or property in sufficient amount to satisfy any immediate or imminent debt that the Court may declare due against Farmland and Safeco pursuant to the terms of the bond, Farmland is attempting a *de facto* assumption of the bond without providing adequate assurance to Safeco of its future performance of its obligations under the bond, including, *inter alia*, its duty to exonerate or *quia timet* Safeco. Alternatively, by Farmland's refusal or otherwise failure to tender to ADM replacement security acceptable to it, or to tender an amount equal to the penal sum of the bond to ADM, or otherwise place Safeco in funds or property in sufficient amount to satisfy any immediate or imminent debt that the Court may declare due against Farmland and Safeco pursuant to the bond, Farmland is contemplating the use of the penal sum of the bond, which is presently the property of Safeco, without providing adequate protection to Safeco of its interests in the bond and the proceeds thereof. Safeco requests that the Court enter an order requiring Farmland to provide Safeco with adequate assurances of the future performance of its obligations remaining under the bond and adequate protection of Safeco's rights in the bond and its proceeds.

Farmland filed an answer to the Amended Complaint. ADM responded by filing the motion to dismiss presently under consideration. ADM asserts that this Court does not have subject matter jurisdiction over the controversy set forth in the Amended Complaint. ADM argues that except in its role as principal under bond number 6101710, the dispute between Safeco and ADM as alleged in the Amended Complaint does not concern Farmland, and the controversy is not related to Farmland or Farmland's bankruptcy case because a resolution of this dispute between third parties will have no effect on the administration of the bankruptcy estate. ADM contends that *Foley Co. v. Aetna Cas. & Surety Co. (In re S & M Constructors, Inc.)*, 144 B.R. 855 (Bankr. W.D.Mo.1992), is dispositive of the ques-

tion under consideration here. ADM asserts that the *Foley* opinion, as well as the cases cited and relied upon therein, hold that a proceeding which is simply a precursor to a party's indemnification claim against the debtor does not have a sufficient impact on the administration of the bankruptcy estate to support subject matter jurisdiction.

Safeco predictably asserts that this Court does have subject matter jurisdiction over the controversy alleged in the Amended Complaint. Safeco argues that the bond at issue is a tripartite contract integrally involving and impacting the rights and duties of Farmland, Safeco and ADM, and that this Court has subject matter jurisdiction to declare and enforce the rights and responsibilities of all three parties thereto. Safeco contends that the authority relied upon by ADM in support of its motion to dismiss is readily distinguishable from the case at hand. Safeco argues that there are multiple bases for subject matter jurisdiction here: (1) the Amended Complaint involves a core proceeding under 28 U.S.C. § 157(b)(2)(O) because Safeco seeks a declaration from this Court as to the rights and obligations of all of the parties to the bond, the determination of which will affect the adjustment of the debtor-creditor relationship between Farmland and Safeco; (2) Safeco's action against Farmland for *quia timet*, or, in the alternative, for exoneration, which causes of action, Safeco contends, may be enforced by Safeco even in the absence of either payment to ADM under the bond or a suit by ADM brought against Safeco pursuant to the bond, involves a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O) because Safeco seeks to enforce its equitable rights to cause Farmland to satisfy the claims of ADM against the bond prior to Safeco being required to satisfy ADM's claim under the bond, or compel Farmland to place Safeco in prop-

erty to satisfy any impending liability Safeco may have to ADM, and that ADM's claim, if determined to be valid, will therefore ultimately be satisfied out of property of the estate, and the use and depletion of estate property affects the administration of the estate; (3) the Court has jurisdiction over Safeco's demand against Farmland for adequate protection and adequate assurance, and a resolution of these issues requires the Court to determine Farmland's rights and obligations to both ADM and Safeco; and (4) pursuant to the reasoning of *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), this Court has, at least, "related to" jurisdiction because Farmland is unconditionally bound to indemnify Safeco pursuant to the General Agreements of Indemnity if Safeco is required to pay the $5 million penal sum of the bond to ADM, which conceivably has an effect upon the administration of the bankruptcy estate.

## *Legal Analysis*

■ Because this Court's jurisdiction has been challenged, the undersigned begins the analysis with an examination of the statutory authority for bankruptcy court jurisdiction. Section 1334(b) of title 28 provides that:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

Section 157 of title 28 provides in relevant part:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or

arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157. A non-exclusive list of core proceedings is set forth in 28 U.S.C. § 157(b)(2). According to section 157(c)(1) of title 28:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). Section 157(c)(2) of title 28 provides that:

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c)(2).

The District Court for the Western District of Missouri has provided for an automatic reference of all civil proceedings arising under title 11 or arising in or related to cases under title 11 to the bankruptcy judges as provided for in 28 U.S.C.

§ 157; therefore, this Court has jurisdiction to hear any case that arises under title 11 or arises in or is related to a case under title 11. *See Bannister Bank & Trust v. City Mgmt. Co. (In re AmerEco Environmental Servs., Inc.)*, 138 B.R. 590, 592–93 (Bankr.W.D.Mo.1992). In *Abramowitz v. Palmer*, 999 F.2d 1274, 1277–78 (8th Cir. 1993), the Eighth Circuit Court of Appeals discussed the jurisdiction of the bankruptcy courts:

The jurisdiction of the federal bankruptcy courts, is governed by 28 U.S.C. § § 157 and 1334. Pursuant to this statutory authority, the bankruptcy courts, upon delegation from the district courts, have jurisdiction of all cases filed pursuant to the bankruptcy code as well as "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334; 28 U.S.C. § 157(a)(authorization for district courts to refer to the bankruptcy judges any or all bankruptcy cases and any or all related proceedings). In addition, the bankruptcy court's jurisdiction includes all property of the debtor and of the bankruptcy estate.

. . . .

Civil proceedings in a bankruptcy case are divided into two categories: (1) core proceedings and (2) non-core, related proceedings. . . . *[S]ee . . . In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 980 (D.Minn.1989)("In general, a core proceeding is a legal dispute between parties in interest to a bankruptcy case, one of whom is almost always the debtor."). . . .

The bankruptcy code does not define "related to" jurisdiction. This court, however, has stated that in order for the bankruptcy court to assume "related to" jurisdiction the proceeding at issue must " 'have some effect on the administration of the debtor's estate.' " *In re Dog-*

*patch,* 810 F.2d 782, 786 (8th Cir.1987). To determine whether a proceeding is "related to" a bankruptcy case, we have adopted what has been framed as the "conceivable effect" test:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 786 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *see also In re Titan Energy, Inc.,* 837 F.2d 325 (8th Cir.1988).

In *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773–74 (8th Cir.1995), the Eighth Circuit further explained:

> Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)(*Wood* ); *see* 28 U.S.C. § 157(b)(2). Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy. *Wood,* 825 F.2d at 97....

> For subject matter jurisdiction to exist in a "related to" action, there must be some nexus between the civil proceeding and the Title 11 case. *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 787 (11th Cir.1990)(*Lemco*). We have stated that for courts to assert jurisdiction over a proceeding "related to" a bankruptcy case, the proceeding must " 'have some effect on the administration of the debt-

or's estate.' " *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987)(*Dogpatch*)(quoting *Zweygardt v. Colorado Nat'l Bank,* 52 B.R. 229, 233 (Bankr.D.Colo.1985)).

In *Foley Co. v. Aetna Cas. & Surety Co. (In re S & M Constructors, Inc.),* 144 B.R. 855 (Bankr.W.D.Mo.1992), Foley, as general contractor, entered into a subcontract with S & M Constructors for a project for the United States Army Corps of Engineers. In accordance with the subcontract, S & M Constructors executed and delivered to Foley performance and payment bonds, with S & M Constructors as principal and Aetna Casualty as surety for the benefit of Foley as obligee. Foley alleged that S & M Constructors failed to properly perform its obligations under the subcontract; that it was forced to complete the work improperly performed by S & M Constructors; and that as a result of the failure of S & M Constructors to perform its obligations under the subcontract, it sustained damages in the amount of approximately $2.3 million. Foley and S & M Constructors attempted to resolve their dispute through arbitration; however, before arbitration could be completed S & M Constructors filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. Shortly thereafter, Foley filed a complaint against Aetna Casualty in the United States District Court for the Western District of Missouri seeking to recover its damages from Aetna Casualty pursuant to the performance and payment bonds. Aetna Casualty removed the action from the District Court to the United States Bankruptcy Court for the Western District of Missouri, then filed a motion to have the adversary proceeding transferred to the United States Bankruptcy Court for the Northern District of Ohio. Foley responded by filing a motion to remand the

action back to the District Court, and opposing Aetna Casualty's motion to transfer. The Honorable Arthur B. Federman denied Aetna Casualty's motion to transfer and sustained Foley's motion for remand, opining:

The issue that first must be addressed is whether this Court has jurisdiction over Foley's action against Aetna for recovery under the payment and performance bonds. Section 1334 of Title 28, United States Code, establishes four categories of bankruptcy cases and proceedings over which district courts may exercise jurisdiction. A district court may refer to the bankruptcy court any or all (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. 28 U.S.C. § 157(a).

. . . .

Unless a case or proceeding falls within one of the four specified categories of cases and proceedings over which the district court is granted jurisdiction pursuant to section 1334(a) or (b), and which are listed in section 157(a), it cannot be heard by the bankruptcy court.

. . . .

Foley's action against Aetna for recovery under the payment and performance bonds certainly is not a "case under title 11." Nor is it a "core proceeding arising under title 11," since it is not a claim or cause of action expressly created by title 11. Furthermore, it cannot be said that Foley's action would have no existence absent S & M's bankruptcy; and, therefore, the present action is not a "core proceeding arising in a case under title 11." In fact, the debtor S & M is not even a party to this action. The controversy as presently postured is between two non-debtor entities.

Thus, in order for this Court to entertain jurisdiction over this matter, it must be a "non-core proceeding related to a case under title 11." Since Foley's cause of action is not one that was owned by the debtor that became part of the estate under section 541, it may qualify as a "non-core related proceeding" only by virtue of its being a suit between third parties which affects the administration of the title 11 case, here S & M's bankruptcy case.

The authority upon which a majority of the courts rely in determining whether a non-core proceeding is sufficiently related to bankruptcy to confer jurisdiction on the bankruptcy court is *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). *See In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 n. 19 (11th Cir. 1990). In *Pacor,* the plaintiff Higgins brought a product liability action in Pennsylvania state court against Pacor seeking damages allegedly caused by Higgins' exposure to asbestos that had been supplied by Pacor. Pacor then filed a third party complaint impleading Johns–Manville, which Pacor alleged to be the original manufacturer of the asbestos. The state court severed the Pacor–Manville third party action from the underlying Higgins–Pacor action. Pacor then sought to have the entire dispute removed to the United States Bankruptcy Court for the Eastern District of Pennsylvania, and then transferred to the Manville bankruptcy in the Southern District of New York. On appeal from the bankruptcy court's decision to remand the entire action to state court, the District Court for the Eastern District of Pennsylvania ruled that the Higgins–Pacor direct action was not "related to" the Manville bankruptcy and should be remanded to the state court. *Pacor,* 743 F.2d at 986. The district court did, however, find that the Pacor–

Manville third party claim was a proceeding "related to" the Manville bankruptcy, and remanded that portion of the action to the bankruptcy court for consideration of Pacor's transfer motion. *Pacor,* 743 F.2d at 987.

In affirming the district court's determination that the Higgins–Pacor action was not a "related to" proceeding, the Third Circuit explained:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor,* 743 F.2d at 994 (citations omitted)(emphasis original). According to the Court of Appeals, the primary action between Higgins and Pacor "would have no effect on the Manville bankruptcy estate," and "[a]t best, [would be] a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Pacor,* 743 F.2d at 995.

The reasoning of the *Pacor* court was approved by the Eighth Circuit in *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986). *See also In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987).

. . . .

This action more closely resembles that in the case of *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986). In *Coopers & Lybrand,*

a bank, which was the indenture trustee for various notes issued by one of the debtor entities, brought suit against Coopers & Lybrand under state law alleging negligence, fraud, and breach of contract. The bank sought to recover from Coopers & Lybrand the amount of the indenture noteholders' claims that were left unpaid under the terms of the debtor's reorganization plan. Coopers & Lybrand removed the action from state court to federal court, alleging federal question jurisdiction based on 28 U.S.C. §§ 1331 and 1334(b). Thereafter, the bank filed a motion to remand the action to state court, and Coopers & Lybrand sought transfer of the action from the District Court for the District of Nebraska to the Bankruptcy Court for the Central District of California, which had retained jurisdiction over the bankruptcy proceedings. Upon concluding that the bank's action against Coopers & Lybrand was "at most a precursor to [Coopers & Lybrand's] potential indemnification action against" the debtor, the district court held, *inter alia,* that bankruptcy jurisdiction did not exist under 28 U.S.C. § 1334(b). *Coopers & Lybrand,* 802 F.2d at 993 (citing the district court's slip opinion); *see also Pacor,* 743 F.2d at 995.

In reviewing the district court's holdings, the Court of Appeals agreed that the bank's action did not "arise under" title 11 "because none of [the bank's] claims is based on a provision of Title 11." *Coopers & Lybrand,* 802 F.2d at 994. Furthermore, the Eighth Circuit approved of the district court's reliance on the reasoning of *Pacor, Inc. v. Higgins, supra,* and agreed that the bank's action against Coopers & Lybrand did not constitute a "core proceeding arising in a case under title 11" or a "non-core proceeding related to a case under title

11." *Coopers & Lybrand,* 802 F.2d at 994.

Aetna attempts to distinguish *Pacor* on the basis that in *Pacor* there was no contractual indemnification between Pacor and Johns–Manville, whereas the debtor S & M and its four individual owners contractually agreed to indemnify Aetna for any liability incurred as a result of the performance and payment bonds. It is true that the Third Circuit did distinguish the Higgins–Pacor action from an action against a guarantor of the debtor's obligations. *Pacor,* 743 F.2d at 995. In *dictum,* the court explained that "[b]y virtue of the indemnification agreement between [the debtor] and [the guarantor], a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against [the debtor] ... Moreover, even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that that [sic] creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation." *Pacor,* 743 F.2d at 995.

Like the bank's action against Coopers & Lybrand, and the Higgins–Pacor action in *Pacor,* Foley's action against Aetna is, at most, a precursor to Aetna's indemnification claim against S & M. The performance and payment bond obligations of Aetna, if any, are not an asset of S & M's bankruptcy estate. Pursuant to the terms of such bonds, S & M is not a necessary party to this action. A judgment against Aetna will not necessarily be dispositive of any defenses which S & M may have against Aetna's possible indemnification claims. Accordingly, as in *Coopers & Lybrand, supra,* Foley's action against Aetna is

not a "non-core proceeding related to a case under title 11."

*S & M Constructors,* 144 B.R. at 858–62 (footnotes omitted).

This Court is persuaded by the sound reasoning of *S & M Constructors,* and determines that although the factual situation is slightly different here in that Safeco has filed an action against both ADM, the obligee, and Farmland, the debtor/principal, in seeking a determination of its liability under the bond, Safeco's action against ADM is merely a precursor to a potential indemnification claim against Farmland. By means of this adversary proceeding, Safeco is attempting to compress into one step the two-step process of first determining whether Safeco is liable to ADM under the performance bond and then, if so, whether Farmland must indemnify Safeco. However, it will not be necessary to address the second step of this process if Safeco is successful in its action against ADM. Judge Federman in *S & M Constructors,* after analyzing relevant Eighth Circuit and Third Circuit case law, determined that a bankruptcy court does not have subject matter jurisdiction over the first step in the process by which the surety's liability to the obligee under a performance bond is established, and the undersigned heartily agrees. Accordingly, Safeco must bring its cause of action against ADM in the proper forum.

█ Further, this Court does not believe at this stage of the proceedings that it is appropriate to make any determination whether Farmland is liable to Safeco under the theories of exoneration or *quia timet.* In *Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 934 F.2d 30, 32–33 (2d Cir.1991) (citations omitted)(emphasis in original), the Second Circuit Court of Appeals explained that:

Quia timet is the right of a surety to demand that the principal place the

surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor.... Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor....

Historically, a bill *quia timet* was the procedural device by which a court of equity would exercise its jurisdiction "to protect a party against the occurrence of some future injury which he fears he may suffer, and which he cannot avoid by a present action at law...." *Quia timet* is the applicable remedy available to the surety before the principal's debt is mature when it becomes likely that the principal will default on his obligation; exoneration is the proper remedy once liability has matured and the principal has defaulted on his debt to the creditor.

*Quia timet* and exoneration contain common substantive elements. Specifically, the surety must establish that the debt is presently due (exoneration) or will come due (*quia timet*), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor.... "[B]efore paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources *when the loss must in the end fall upon the principal.*"

In *Uptagrafft v. United States,* 315 F.2d 200, 203 (4th Cir.1963), *cert. denied,* 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 52 (1963) (citations omitted), the Fourth Circuit Court of Appeals clarified that:

Though 'exoneration' and 'indemnity' are often used interchangeably, the former refers to the right to be reimbursed by reason of having paid that which another should be compelled to pay.... the latter, as applied to the facts of this case, means compensation for loss already sustained. This right is generally based upon contract, express or implied.

To recover against Farmland under the theory of exoneration, Safeco must either have actually paid or it has been determined that it will be required to pay the $5 million penal sum of the bond to ADM. Additionally, a contract of indemnity exists between Farmland and Safeco. Because a cause of action under either exoneration or indemnity involves a similar claim for relief, the Court believes that Safeco will not be prejudiced by being required to first bring a cause of action against ADM in an appropriate forum, then, if it is determined that Safeco is liable under the bond, pursuing a cause of action against Farmland for exoneration and/or indemnity in this Court.

The Court further agrees with ADM's characterization of Safeco's *quia timet* cause of action as "pre-emptive indemnification" or "pre-emptive exoneration" under the facts of this case as alleged in the Amended Complaint. Here, Safeco expressly pled in the factual allegations of its Amended Complaint that Farmland "is not in default under the Bond," and there is no allegation that Farmland is likely to default. Further, there is no allegation that ADM is seeking payment under the performance bond based upon any default on the part of Farmland. Additionally, even if Farmland had defaulted under the bond, the Court believes that Safeco's *quia timet* cause of action should be adjudicated only if Safeco is actually determined to be liable to ADM on the bond. Because the Court does not have subject matter jurisdiction

to decide the controversy between Safeco and ADM, judicial economy and this Court's limited resources will best be served by waiting until an appropriate forum has resolved the dispute between Safeco and ADM before the Court addresses Farmland's potential liability to Safeco under a theory of *quia timet*. For the same reason, the Court does not believe that it is appropriate at this time to adjudicate Safeco's claims against Farmland based upon adequate assurance and adequate protection.

The Court disagrees with Safeco's contention that *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), provides the authority for this Court to exercise subject matter jurisdiction over the dispute between Safeco and ADM. In *Celotex,* in 1987 Bennie and Joann Edwards filed suit in the United States District Court for the Northern District of Texas against Celotex alleging asbestos-related injuries. In April of 1989 the district court entered a judgment in favor of the Edwardses and against Celotex in the amount of approximately $280,000.00. To stay execution of the judgment pending appeal, Celotex posted a supersedeas bond[2] in the amount of almost $300,000.00 with Northbrook Property and Casualty Insurance Company serving as surety. As collateral for the bond, Celotex allowed Northbrook to retain money owed to Celotex under a settlement agreement resolving insurance coverage disputes between Northbrook and Celotex. On October 12, 1990, the Fifth Circuit Court of Appeals affirmed the district court's judgment, which rendered final the Edwardses' judgment against Celotex. That same day Celotex filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. On October 17, 1990, the Florida bankruptcy court exercised its equitable powers under 11 U.S.C. § 105(a) and issued an injunction which stayed all proceedings involving Celotex regardless of whether the matter was on appeal and a supersedeas bond had been posted by Celotex, and which prohibited creditors like the Edwardses from proceeding against sureties without the Florida bankruptcy court's permission. The Edwardses filed a motion pursuant to Federal Rule of Civil Procedure 65.1 in the Texas district court seeking permission to execute against Northbrook on the supersedeas bond. Celotex and Northbrook opposed the motion, asserting that all proceedings to enforce the bonds had been enjoined by the Florida bankruptcy court. The Texas district court allowed the Edwardses to execute on the supersedeas bond against Northbrook. Celotex appealed, and the Fifth Circuit Court of Appeals affirmed. On further appeal, the United States Supreme Court reversed, holding that the Edwardses could not collaterally attack the Florida bankruptcy court's section 105(a) injunction by filing a motion to execute against the surety on the supersedeas bond in the Texas district court. The Edwardses were required to obey the Florida bankruptcy court's order until it was modified or reversed, and their recourse was to seek appellate review of the Florida bankruptcy court's decision within the Eleventh Circuit.

The Edwardses asserted before the Supreme Court that the Florida bankruptcy court lacked jurisdiction to issue the section 105(a) injunction. In response, the Supreme Court opined:

---

2. Black's Law Dictionary defines a supersedeas bond as a "bond required of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." Black's Law Dictionary 1289 (5th ed. 1979).

The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Here, the Bankruptcy Court's jurisdiction to enjoin respondents' proceeding against Northbrook must be based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a).

Respondents argue that the Bankruptcy Court had jurisdiction to issue the Section 105 Injunction only if their proceeding to execute on the bond was "related to" the Celotex bankruptcy. Petitioner argues the Bankruptcy Court indeed had such "related to" jurisdiction. Congress did not delineate the scope of "related to" jurisdiction, but its choice of words suggests a grant of some breadth. . . . We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," *id.*, at 994, . . . and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" juris-

diction cannot be limitless. *See Pacor, supra*, at 994. . . .

We believe that the issue whether respondents are entitled to immediate execution on the [supersedeas] bond against Northbrook is at least a question "related to" Celotex's bankruptcy. Admittedly, a proceeding by respondents against Northbrook on the supersedeas bond does not directly involve Celotex, except to satisfy the judgment against it secured by the bond. But to induce Northbrook to serve as surety on the bond, Celotex agreed to allow Northbrook to retain the proceeds of a settlement resolving insurance coverage disputes between Northbrook and Celotex. The Bankruptcy Court found that allowing respondents-and 227 other bonded judgment creditors-to execute immediately on the bonds would have a direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization. It stated:

> "[I]f the Section 105 stay were lifted to enable the judgment creditors to reach the sureties, the sureties in turn would seek to lift the Section 105 stay to reach Debtor's collateral, with corresponding actions by Debtor to preserve its rights under the settlement agreements. Such a scenario could completely destroy any chance of resolving the prolonged insurance coverage disputes currently being adjudicated in this Court. . . ." *In re Celotex*, 140 B.R. 912, 915 (1992)(*Celotex II*).

*Celotex*, 514 U.S. at 307–10, 115 S.Ct. at 1498–1500 (citations and footnotes omitted).

In his dissent, Justice Stevens remarked that he:

> [D]id not take issue with the conclusion that the Edwards' attempt to collect on the supersedeas bond falls within the "related to" jurisdiction of the district

court. *Cf.* 1 Collier on Bankruptcy ¶ 3.01[1][c][iv], p. 3–29 (15th ed.1994)(hereinafter Collier)(" 'Related' proceedings which involve litigation between third parties, which could have some effect on the administration of the bankruptcy case, are illustrated by suits by creditors against guarantors"). Despite the Edwards' argument to the contrary, it seems to me quite clear that allowing the Edwards to recover from Northbrook on the supersedeas bond would have an adverse impact on Celotex because Northbrook would then be able to retain the insurance proceeds that Celotex pledged as collateral when the bond was issued.

*Celotex,* 514 U.S. at 320 n. 5, 115 S.Ct. at 1504 n. 5 (Stevens, J., dissenting).

This Court believes that the supersedeas bond at issue in *Celotex* is distinguishable from the performance bond at issue here. In *Celotex,* the condition precedent to recovery under the supersedeas bond was a final judgment rendered in favor of the Edwardses in their lawsuit against Celotex. Thereafter, in the absence of the Florida bankruptcy court's section 105(a) injunction, they had an unquestionable right to execute against the surety on the bond. Further, the surety under the supersedeas bond then had an immediate right to proceed against the property that Celotex had pledged as collateral for the bond. In this case, Safeco's liability to ADM under the performance bond is not certain, but must be established in a proper forum. If it is determined that ADM is entitled to the penal sum of the bond, Safeco then may proceed against Farmland, which may be able to assert defenses to an indemnification claim. As was the situation in *S & M Constructors,* a judgment against Safeco in favor of ADM will not necessarily be dispositive of any defenses that Farmland may have against Safeco's possible indemnification claims. *See S & M Constructors,* 144 B.R. at 862.

### Conclusion

Based on the above discussion, the motion filed by ADM/Farmland, Inc. pursuant to Fed. R. Bankr.P. 7012(b) and Fed. R.Civ.P. 12(b)(1) requesting that the Court dismiss the Amended Complaint for Declaratory Judgment, Injunctive Relief Under Section 105 of the United States Bankruptcy Code, Adequate Assurance and Adequate Protection, and for Exoneration, or, in the Alternative, Quia Timet ("Amended Complaint") filed by Safeco Insurance Company of America is GRANTED IN PART and DENIED IN PART. The cause of action in the Amended Complaint in which Safeco Insurance Company of America seeks relief against ADM/Farmland, Inc. is DISMISSED. The Court ORDERS that Safeco Insurance Company of America's causes of action against Farmland Industries, Inc. will be HELD IN ABEYANCE pending a determination in an appropriate forum whether Safeco Insurance Company of America is liable to ADM/Farmland, Inc. under bond number 6101710. The Court ORDERS that if an appropriate forum determines that Safeco Insurance Company of America is liable to ADM/Farmland, Inc., it may continue with the prosecution of its causes of action pending against Farmland Industries, Inc. The Court ORDERS that if an appropriate forum determines that Safeco Insurance Company of America is not liable to ADM/Farmland, Inc., Safeco Insurance Company of America will promptly dismiss the Amended Complaint. A status conference will be scheduled every six months in this adversary proceeding in order to track the progress of Safeco Insurance Company of America's action against ADM/Farmland, Inc.